UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:09-cv-80608-KLR

---

SHAWN KATHCART, on his own
Behalf and others similarly situated,

    Plaintiff,

v.

FIRST UNIVERSAL LENDING, LLC,
a Florida Limited Liability Company,
DAVID FEINGOLD, individually, SEAN
ZAUSNER, individually, jointly and severally,

    Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS COMPLAINT, MOTION TO COMPEL ARBITRATION, AND REQUEST FOR COURT TO RETAIN JURISDICTION TO HOLD HEARING ON RECOVERY OF ATTORNEY'S FEES FOR FILING FRIVILOUS LITIGATION

COMES NOW, the Defendants, FIRST UNIVERSAL LENDING, LLC, a Florida Limited Liability Company ("First Universal"), DAVID FEINGOLD, individually ("Feingold"), and SEAN ZAUSNER ("Zausner"), individually, jointly and severally (collectively, "Plaintiffs"), by and through their undersigned counsel and hereby files this Motion to Dismiss Plaintiff's, SHAWN KATHCART, on his own behalf and others similarly situated ("Kathcart" or "Plaintiff"), Complaint, Motion to Compel Arbitration, and Request for Court to Retain Jurisdiction to Hold Hearing on Recovery of Attorney's Fees for Filing Frivolous Litigation, and in support thereof sets forth the following:

## I. INTRODUCTION

The crux of the Complaint (D.E. 1) is that Plaintiff Kathcart [and others similarly situated] are allegedly entitled to compensation to which they were lawfully entitled for all of the hours worked in excess of Forty (40) within a given work week pursuant to Title 29 U.S.C. §§ 201 – 209. (D.E. 1, p. 3, ¶ 13). Noticeably absent from the Complaint is any mention of the binding written employment agreement that Plaintiff Shawn Kathcart (as well as all First Universal employees) executed with First Universal on March 12, 2007 ("FUL Employment Agreement"), the first date of his employment. (*See*, First Universal Employment Agreement, attached hereto as, Exhibit "A").[1]

Significantly, the FUL Employment Agreement specifically provides:

> "Any disputes between the Company, its officers, directors, agents or affiliates and any associate may **only be resolved in arbitration** under the rules of the American Arbitration Association with venue only appropriate in Palm Beach County, Florida. However, the Company may pursue injunctive relief against any associate for violation of any provision and to enforce a provision in the Circuit Court in Palm Beach County, Florida without posting any bond."

(Emphasis added). (*See*, Exhibit "A", p. 2, ¶ 2 titled 'DISPUTE RESOLUTION PROCESS'). That said, as will be more fully described below, case law in this Circuit unambiguously supports a strong federal policy supporting arbitration agreements. *See*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir. 1992); *Kidd v. Equitable Life Assurance Society of U.S.*, 32 F.3d 516, 520 (11th Cir. 1994).

Had Mr. Richard Celler, Esq. ("Mr. Celler"), Plaintiff's counsel, performed even

---

[1] Shawn Kathcart specifically initialed every page of the binding written agreement and fully executed said agreement on its last page with his legal signature.

the slightest bit of due diligence as required of any attorney filing suit in the Southern District of Florida, he would have found Plaintiff's employment agreement requiring binding arbitration in Palm Beach County, FL. (*See*, Exhibit "A"). Either Mr. Celler did not do any due diligence *or* he found the FUL Employment Agreement and chose to ignore its clear language; in either case, this Court should require the instant matter to go to binding arbitration, should close and remove the case from the Court's docket, and retain jurisdiction to hear Defendants' forthcoming motion for recovery of attorney's fees and costs for Plaintiff knowingly filing frivolous litigation [and for a hearing upon said request].

As will be shown later in this memo, it appears Plaintiff's counsel intentionally ignored the arbitration provision in order to seek to raise the costs of litigation and to force a settlement as the Plaintiff contacted the Defendants directly indicating that his attorney indicated that he would drive up litigation costs and challenge any arbitration provision if a quick settlement was not forthcoming. It was further threatened that employees of First Universal would be recruited to make matters even more costly. After the dismissal of this suit and based upon the improper threats by Plaintiff and its counsel as discussed below, the Court is requested to retain jurisdiction so that that Defendants can prepare for and file the appropriate papers to have a full evidentiary hearing on the extortive measures used in this case and the appropriate sanctions to be issued against Plaintiff and its counsel.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Shawn Kathcart began employment with First Universal on March 12, 2007, as evidenced by the date of his employment agreement with First Universal. (*See*, Exhibit

3

"A"). By way of background, First Universal Lending, LLC is a diversified lending institution which also makes available to clients multiple sources of services that are consistent with the approach of being a full service provider of all services related to the completion of a real estate transaction. (*See*, www.firstuniversallending.com).

Mr. Kathcart, like **all** "associates"[2] of First Universal sign FUL's Employment Agreement on their first day of employment. (*See*, Exhibit "A"). Until April 24, 2009, when Defendant Sean Zausner was served with the instant Complaint, no Defendant in this action had been contacted in any manner by Plaintiff Kathcart [nor an attorney on his behalf] indicating that Kathcart had not been fully compensated by First Universal, including any alleged overtime compensation owed. Furthermore, although not germane to moving this case to arbitration, if Mr. Celler had done his due diligence he would have also learned that besides arbitration, there are other required dispute resolution pre-actions that Mr. Kathart had to take to present a claim, such as giving written notice of the amount he claims owed. It is outrageous that a claim would be filed and that not even a statement as to the alleged money claimed to be owed is made because quite frankly there is no claim and this is simply a case being pursued as a "shakedown" by a wage and hour law firm.

In fact, in the approximately one and one half years (1.5) since Kathcart had left employment with First Universal, no Defendant in this action was ever contacted by Mr. Kathcart, or by anyone on Mr. Kathcart's behalf. Suddenly, without warning or so much of a letter or phone call, the law firm of Morgan & Morgan, P.A. filed a lawsuit against

---

[2] Associates are defined as "every full and part-time employee, every independent contractor, any person or entity that represents the Company and its subsidiaries, all members of the Company's senior management, including the Company's Chief Executive Officer and Chief Financial Officer, and every member of the Company's Board of Directors, even if such member is not employed by the Company." (*See*, Exhibit "A", p. 1, ¶ 1).

the Defendants for alleged overtime compensation owed not only to Kathcart, but all others similarly situated. It would stand to reason that the Plaintiff lawyers would have at least tried to read and determine what employment agreements existed since they allegedly are lawyers focusing on employment issues and that reasonably should be one of the first questions asked to a client. Instead, as will be seen later, the Plaintiff has simply called the Defendants requesting the payment of fees or they will go round up more clients to make claims and cause First Universal to incur more costs.

Based upon this sudden lawsuit, and with the knowledge that (1) a fully executed employment agreement exists; (2) this employment agreement clearly contains a dispute resolution mechanism; and (3) hence, arbitration is the only appropriate method to entertain Plaintiff's allegations – Mr. David J. Feingold, Esq.[3] sent a letter to Mr. Richard Celler, Esq. on April 28, 2009 stating the following:

> "I am in receipt of your lawsuit against First Universal Lending, LLC (hereinafter "First Universal") regarding an alleged claim for overtime. As you are aware, as a licensed attorney and an officer of the court, it is your ethical obligation to research all matters prior to filing suit. In particular, Mr. Kathcart had a binding written agreement with First Universal involving the appropriate dispute resolution mechanism. Hence, he specifically is not permitted to pursue any claims in Federal Court.
>
> We are giving you until 5 p.m. tomorrow to dismiss your claim or we shall be seeking sanctions, as well as all other appropriate remedies, against you personally, as well as your firm. Since you would be ethically required to know this information prior to filing suit as part of your diligence, we are giving you this deadline as a professional courtesy. I also strongly urge you to strictly comply with the dictates of Mr. Kathcart's employment agreements in the near future. If we do not see that your suit has been dismissed by 5 p.m. tomorrow, we will be seeking sanctions and requesting a hearing before Judge Ryskamp, who has previously issued sanctions against wage and hour law firms."

(*See*, Feingold's 4/28/09 letter to Mr. Celler, attached hereto as, Exhibit "B"). Upon receipt of this letter Mr. Celler contacted Mr. Feingold via telephone. While a reasonable

---

[3] Named Defendant and member of Feingold & Kam, LLC, counsel for all Defendants.

5

attorney would read this letter, see that a binding arbitration agreement is part of the FUL Employment Agreement [although this should have been discovered in Mr. Celler's 'due diligence' before filing suit], and agree to dismiss the case in favor of arbitration in Palm Beach County, FL per the agreement; Mr. Celler's response to Mr. Feingold was that his letter was "stupid."  Not only is it clear that Mr. Celler performed absolutely no investigation prior to filing the instant lawsuit, Mr. Celler's response, when it was brought to his attention that this lawsuit was frivolous litigation and Defendants intended to seek sanctions against Mr. Celler personally, and his law firm, was that Mr. Feingold's gratuitous 'warning' was apparently "stupid" and not worth his time.  This lawsuit should never have been filed in federal court, and now the Court is having to expend its valuable time to review Plaintiff's wholly baseless claim.

As if not enough, on April 29th, 2009, Plaintiff Shawn Kathcart called Defendant Sean Zausner at the offices of First Universal, and stated that Mr. Celler, his attorney, would agree to drop the lawsuit if the Defendants would agree to pay Kathcart five thousand dollars ($5,000.00) and the law firm of Morgan & Morgan, P.A. fifteen thousand dollars ($15,000.00).  Kathcart proceeded to state that if the Defendants refused to pay, Mr. Celler stated that he would go to every former First Universal employee and sign them up to join the instant lawsuit as 'others similarly situated and drive costs up so much as to put the firm out of business.  It was even admitted during this conversation that Mr. Celler knew that there was an FUL Employment Agreement and that he would continue to pursue the action and claim the agreement was not binding in an effort to exponentially raise attorney's fees unless the Defendants agreed to settle.  This is a classic shake-down, and the Court should be appalled by this conduct.

6

## MEMORANDUM OF LAW

### III. ARGUMENT

    **A.**    <u>There is a Strong Federal Policy Favoring Enforcement of Arbitration</u>

There are a multitude of arguments the Defendants could choose to raise here, however, the only fact this Court needs to recognize is that a binding arbitration agreement is clearly present in the FUL Employment Agreement signed by Plaintiff Kathcart, and which places this case into the jurisdiction of the American Arbitration Association. (*See*, Exhibit "A").

There is a strong federal policy in this Circuit favorably supporting arbitration agreements. *See*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 700 (11th Cir. 1992); *Kidd v. Equitable Life Assurance Society of U.S.*, 32 F.3d 516, 520 (11th Cir. 1994). Although no ambiguities exist, as is clear from the FUL Employment Agreement cited above, any ambiguities in the language of the agreement should be resolved in favor of arbitration. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also*, *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford*, 489 U.S. (1989). Arbitration is a matter of consent, not coercion. *Id.* "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone*, 460 U.S. at 24. Under this policy, it is the role of courts to "rigorously enforce agreements to arbitrate." *Dean Witter*, 470 U.S. at 221; *see also*, *Klay v. All Defendants*, 389 F.3d 1191 (11th Cir. 2004).

**B.     Sanctions are Warranted Against Plaintiff's Law Firm & Attorney**

Unquestionably, the FUL Employment Agreement mandates arbitration in this matter and dismissal of this case from the Southern District of Florida's docket. (*See*, Exhibit "A"). That being said, the issue remaining here is why the Plaintiff's counsel chose to continue to pursue this lawsuit, even after he was duly informed of a binding arbitration agreement. This question is posed in addition to the fact that Mr. Celler clearly did not undertake any due diligence before filing this lawsuit. The lawsuit is a simple boiler plate form, it does not even allege how many hours or compensation the Plaintiff claims he is owed because it cannot. This is an attorney fee driven claim and nothing more. Moreover, those issues aside, Plaintiff's counsel contacted the Defendants by using the Plaintiff as the go between in an attempt to essentially 'extort' settlement; indicating that a failure to settle by the Defendants would result in Plaintiff's counsel recruiting former First Universal employees to join this baseless lawsuit, that would simultaneously cost the Defendants thousands of dollars in attorney's fees and exponentially raise Plaintiff's attorney's fees. This is the definition of a violation of the Court's rules that warrants the most severe form of sanctions. Consequently, while the Defendants desire this Court to enforce the arbitration agreement, Defendants request that this Court retain jurisdiction only to rule upon Defendants' forthcoming motion for recovery of attorney's fees and/or sanctions and for hearing upon said motion.

Rule 11 of the Federal Rules of Civil Procedure provides that by signing a pleading, motion, or other paper presented to the court, the attorney signing is certifying that the claim asserted is neither frivolous nor brought for an improper purpose. Fed.R.Civ.P. 11; *see also, Benavides v. Miami Atlanta Airfreight, Inc.*, 2008 WL

8

2561909, *1 (S.D. Fla., June 24, 2008). The Eleventh Circuit clearly holds that sanctions under Rule 11 of the Federal Rules of Civil Procedure are proper when the filing party and/or law firm/attorney knew or should have known that the allegations in the complaint were frivolous. *Byrne v. Nezhat*, 261 F.3d 1075, 1117 (11th Cir. 2001). In fact, case law goes so far as to allow the client to be sanctioned for pursuing a frivolous claim "when it knew, or should have known, that its claim was legally and factually baseless." *Id.*; *see also*, *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1093 (11th Cir. 1994).

Even if Plaintiff's counsel were to make an argument that it did undertake appropriate due diligence [which it clearly did not], instead of agreeing to arbitrate once it was brought to Plaintiff's counsel's attention that a binding arbitration agreement does exist, Plaintiff's counsel chose to ridicule undersigned's good-faith 'warning' and proceed to threaten the Defendants with a 'class suit'. Defendants believe it will be most efficient if the Court grant Defendants' request for a hearing to give Plaintiff's counsel the opportunity to explain in open court why he did not perform the requisite due diligence, why he filed a frivolous claim wasting the Court's time, and why he proceeded to threaten/extort the Defendants with further lawsuits. Both Mr. Kathcart and Mr. Celler should be obligated to take the witness stand at this hearing, if the Court gratuitously grants Defendants' request.

## IV. CONCLUSION

WHEREFORE, Defendants request this Court grant their Motion to Dismiss, Motion to Compel Arbitration, and/or Request for Court to Retain Jurisdiction to Hold Hearing on Recovery of Attorney's Fees for Filing Frivolous Litigation, and for such further relief as this Court deems necessary.

9

Dated: May 5, 2009

Respectfully Submitted,

s/ David J. Feingold
David J. Feingold, Esquire
FBN: 0892823
Adam R. Schloss, Esquire
FBN: 0042161
Feingold & Kam
5100 PGA Boulevard
Second Floor
Palm Beach Gardens, FL 33418
Phone: (561) 630-6727
Fax: (561) 630-8936
Email: david@fkfirm.com

### Certificate of Compliance with Local Rule 7.1

Counsel for Defendants have conferred with counsel for Plaintiff in a good faith effort to resolve the issues raised in this motion, but Plaintiff's counsel has failed to appropriate respond to Plaintiff's requests for resolution without the Court, thus the issues raised in the instant motion are ripe for review by the Court.

### Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically via CM/ECF on this 5th day of May, 2009 to: RICHARD CELLER, ESQ., Morgan & Morgan, P.A., 6824 Griffin Road, Davie, FL 33314.

s/ David J. Feingold
David J. Feingold, Esquire
FBN: 0892823
Adam R. Schloss, Esquire
FBN: 0042161
Feingold & Kam
5100 PGA Boulevard
Second Floor
Palm Beach Gardens, FL 33418
Phone: (561) 630-6727
Fax: (561) 630-8936
Email: david@fkfirm.com